[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 24, 2006
THOMAS K. KAHN
CLERK

_____

No. 06-10098
Non-Argument Calendar

_____

Agency No. A96-018-073

SOKOL KROI,

Petitioner-Appellant,

versus

U.S. ATTORNEY GENERAL,

Respondent-Appellee.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(August 24, 2006)**

Before TJOFLAT, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Sokol Kroi, a native and citizen of Albania, petitions this court for review of

the final order of the Board of Immigration Appeals ("BIA"), affirming the immigration judge's ("IJ") order of removal and denial of asylum relief based on an adverse credibility determination.[1] Because we find that the IJ gave specific and cogent reasons for the adverse credibility determination and the decision to deny relief is supported by substantial evidence, we deny the petition.

## I. Background

Kroi sought to enter the United States using false documents, and the Immigration and Naturalization Service ("INS")[2] issued him a Notice to Appear, charging him with removability under INA §§ 212(a)(6)(C)(i) and (7)(A)(i)(I), 8 U.S.C. § 1182(a)(6)(C)(i) and (a)(7)(A)(i)(I). Upon Kroi's arrival in the United States, INS officials conducted a credible fear interview; they noted that Kroi had used false documents in an attempt to gain admission but found credible fear based

---

[1] Although Kroi sought withholding of removal before the IJ, he did not address the denial of that claim in his appeal to the BIA. Accordingly, we lack jurisdiction to consider the claim. 8 U.S.C. § 1252(d)(1) ("A court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right. . . ."); Fernandez-Bernal v. U.S. Att'y Gen., 257 F.3d 1304, 1317 n.13 (11th Cir. 2001) (holding that because the petitioner failed to raise an issue before the BIA, "we do not have jurisdiction to consider it here"). In addition, Kroi has not raised any argument on appeal challenging the denial of relief under the Convention Against Torture, and, therefore, he has abandoned that issue. Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 (11th Cir. 2005).

[2] The Homeland Security Act ("HSA"), effective November 25, 2002, created the Department of Homeland Security ("DHS") and abolished the INS. Pub. L. No. 107-296, 116 Stat. 2135. The HSA transferred INS functions to the DHS. Because this case was initiated by the INS while still in existence, we refer to the INS rather than the DHS as the relevant agency.

2

on political opinion.  Kroi refused to sign the interview forms, though he stated that he understood the process and questions.

In his application for asylum and withholding of removal, Kroi stated that he had been persecuted based on his political opinion and involvement with the Democratic Party in Albania.  He further stated that he had been arrested three times and that members of the governing Socialist Party had burned down his store and threatened to kidnap his son.  Finally, Kroi indicated that he had been a party member since 1994.

At his hearing before the IJ, Kroi submitted several documents, including his birth certificate, a Democratic Party membership card and a letter attesting to his membership, a document indicating that Kroi's grandfather had been a political prisoner, newspaper articles and reports on conditions in Albania.  The government submitted copies of the State Department Country Reports for 2002 and 2003.

Kroi then testified as follows: He lived with his wife and son in Albania, where he had been a member of the Democratic Party since 1992.  He had been threatened and persecuted by members of the Socialist Party since 1997, at which time members of the Party burned down his store.  He was arrested three times by the Secret Police, in 1998, 1999 and 2001.  The 1998 arrest occurred while he was participating in a Democratic Party rally; he was detained for 24 hours, denied food

and water and beaten. In 1999, he was again arrested during a Democratic Party rally; this time he was beaten and warned to change his views. During the 2001 elections, he was arrested at a polling place while he was monitoring an election. The men who arrested him showed their badges and then detained him for six or seven hours, releasing him when the election was over. Additionally, prior to the 2001 election, Kroi was again threatened, and when he refused to change his views, he was beaten and left unconscious. Socialist Party members also threatened to kidnap his son.

Kroi further testified that he left the Albania in December 2002. He had wanted to leave earlier but did not have the means to do so. He traveled to the United States via Greece and France. He did not seek asylum in France because he had no support system there; he has an aunt in the United States. Kroi testified that he was afraid to return to Albania because the Socialists remain in power and, even if he relocated, the Socialists would find him, and his life would be in danger.

Before questioning Kroi, the government submitted a forensic report concerning the documents Kroi had submitted. The report indicated that the documents could not be authenticated and that two of the documents were not what they purported to be. On cross-examination, Kroi admitted that his wife and son, who remained behind in Albania, had not experienced any trouble since he left. He

4

also acknowledged that he had submitted false entry documents and that he had refused to sign documents provided by customs officials, though he explained that his refusal was based on a lack of understanding of the process and the interpreter. He testified that he had not asked for a different interpreter because he feared that such a request would make things worse.

The government asked Kroi why he had indicated in his application that he had joined the Democratic Party in 1994 and then testified that he had joined the Party in 1992. Kroi explained that he had become more active in 1994. He also explained that he continued to fear for his life because, although the current president was a member of the Democratic Party, the president has little power in Albania because the prime minister controls the government.

The IJ denied relief, making an adverse credibility determination based on the false documents, the confusion over dates and Kroi's lack of cooperation with authorities upon arrival. The IJ also found that Kroi had not established past persecution or a well-founded fear of future persecution.

Kroi appealed to the BIA, challenging the IJ's reliance on the forensic report and the adverse credibility finding as well as the decision on the merits. The BIA summarily affirmed.

## II. Discussion

5

Kroi argues that the IJ erred in making an adverse credibility determination because any inconsistency regarding the date he joined the Democratic Party was minor and not relevant. He further notes that the hearing transcript contains much indecipherable testimony, which he contends makes appellate review impossible. Kroi asserts that the IJ improperly relied on the forensic report to discredit his testimony because the report failed to offer any conclusions about the validity of the documents or explain how they were suspect, but rather indicated that the documents could not be verified. Kroi next argues that the IJ erred by requiring authentication of his documents because unauthenticated documents may be used to support an asylum application. He notes that he received the forensic report on the day of the hearing even though the report was completed some fifteen months earlier. He claims that, as a result, Kroi did not have sufficient time to challenge the report, and the IJ's determination was made based on an incomplete record. Finally, Kroi argues that he satisfied his burden of showing his eligibility for asylum relief because he established past persecution based on his political opinion. Kroi contends that the government failed to rebut the presumption of future persecution and that the IJ erred by considering whether he had safe haven in France.

Where, as here, "a single member of the BIA summarily affirms the IJ's decision without an opinion, . . . the IJ's decision becomes the final removal order subject to review." Ruiz v. U.S. Attorney Gen., 440 F.3d 1247, 1254 (11th Cir. 2006). "To the extent that the IJ's decision was based on a legal determination, our review is de novo." Id. We review the IJ's factual determinations under the substantial evidence test, and we "must affirm the [IJ's] decision if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." Id. at 1254-55.

"Under the substantial evidence test, we review the record evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc). Thus, a finding of fact will be reversed "only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Id. A credibility determination is a factual finding and is reviewed under the substantial evidence test. Ruiz, 440 F.3d at 1255.

The Attorney General has discretion to grant asylum if an alien meets the INA's definition of "refugee," which covers:

> any person who is outside any country of such person's nationality
> or, in the case of a person having no nationality, is outside any

7

country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. . . .

INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A). "The asylum applicant carries the burden of proving statutory 'refugee' status." D-Muhumed v. U.S. Attorney Gen., 388 F.3d 814, 818 (11th Cir. 2004). To meet this burden, the alien must establish, with specific and credible evidence: (1) past persecution on account of a statutorily listed factor or (2) a "well-founded fear" that a statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d 1262, 1287 (11th Cir. 2001).

If the alien establishes past persecution, the burden shifts to the government to prove by a preponderance of the evidence that (1) "[t]here has been a fundamental change in circumstances such that the [alien] no longer has a well-founded fear of persecution [or (2) the alien] could avoid future persecution by relocating to another part of the country. . . ." 8 C.F.R. § 208.13(b)(1)(i), (ii).

An adverse credibility determination may alone support the denial of asylum relief. Forgue v. U.S. Attorney Gen., 401 F.3d 1282, 1287 (11th Cir. 2005). If the IJ determines that the alien lacks credibility, the IJ must offer specific, cogent reasons for the finding; the burden then shifts to the alien to show that the IJ's

8

credibility determination was not based by "specific, cogent" reasons or was not supported by substantial evidence. Id.

Here, the IJ determined that Kroi lacked credibility because: (a) his testimony about when he joined the party was inconsistent; (b) he was uncooperative with officials upon arrival in the United States; and (c) he submitted no corroborating evidence of his party membership because he did not confirm the authenticity of the documents he supplied to the IJ.

Kroi discusses the authenticity of the documents he submitted to the IJ in detail. Even assuming that the documents Kroi supplied were valid, however, the record does not compel the conclusion that Kroi's testimony was credible. First, Kroi provided no supporting evidence regarding his arrests in Albania or the fact that his business was burned down. Second, the country reports submitted to the IJ do not dictate the conclusion that members of the Democratic Party in Albania are subject to persecution. Third, Kroi gave inconsistent answers on his asylum application and in testimony regarding when he joined the Party. Finally, Kroi's lack of cooperation with officials upon arrival supports the IJ's adverse credibility findings. All of this, taken together, supports the IJ's conclusion that Kroi's testimony lacked credibility.

Finally, we note that portions of the hearing transcript before the IJ indicate that testimony was indiscernible. This does not, however, justify remand. Even with portions of the transcript missing, the record contains ample evidence justifying the IJ's adverse credibility determination.

Accordingly we DENY Kroi's petition for review.